# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JASON L. COWGER, | ) | |
| | ) | |
|     Petitioner, | ) | Case No. CV 06-445-S-LMB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY | ) | **AND ORDER** |
| ADMINISTRATION, | ) | |
| | ) | |
|     Respondent. | ) | |
| _____ | ) | |

Currently pending before the Court is Jason L. Cowger's Petition for Review seeking review of the final decision of Respondent denying his claim for Title II Social Security disability benefits and Title XVI Supplemental Security Income benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

## ADMINISTRATIVE PROCEEDINGS

Jason L. Cowger ("Petitioner" or "Claimant") filed applications for disability insurance benefits under Title II of the Social Security Act and for supplemental security income benefits under Title XVI of the Act with a protective filing date of November 4, 2003. (AR 16, 57, 331). Petitioner alleged disability beginning July 7, 2003 due to levoscoliosis, twisted hip, elbow,

**MEMORANDUM DECISION AND ORDER - 1**

chronic pain (AR 51, 70).  Petitioner's applications were denied initially (AR 38) and again after

reconsideration (AR 45).

Petitioner filed a timely request for a hearing before an Administrative Law Judge

("ALJ").  (AR 51).  In the Request for Hearing, Petitioner indicated that he was disabled due to

physical and mental limitations.[1]  *Id.*

The ALJ held a video hearing conference on July 20, 2005.  (AR 53, 348).  Petitioner,

represented by attorney Jacob Bernhardt, appeared and testified (AR 348, 352-353).  Lester

Hudson, a vocational expert, was present at the hearing but did not testify.  (AR 348, 394).  At

the time of the hearing before the ALJ, Petitioner was thirty-one years of age with past work

experience as a construction worker and a cable installer.  (AR 110).

On April 20, 2006, the ALJ issued a decision denying Petitioner's applications because he

found Petitioner has the residual functional capacity for a full range of light work and

considering Petitioner's age, education, and work experience, Medical-Vocational Rule 202.21

would apply to the evidence and direct a conclusion of not disabled.  The ALJ therefore

concluded that Petitioner was not under a disability as defined in the Social Security Act at any

time through the date of the decision.  (AR 27).

Petitioner requested the Appeals Council review the ALJ's decision.  (AR 12).  The

Appeals Council denied Petitioner's request on July 28, 2006, making the ALJ's decision the

final decision of the Commissioner of Social Security.  (AR 5).

---

[1]   Petitioner had noted on his Disability Report dated November 17, 2003 that he was enrolled
in special education classes at Vallivue High School in Caldwell, Idaho.  (AR 76).  However, it
does not appear that Petitioner had argued that he was disabled to due a mental condition until
the Request for Hearing (AR 51).

**MEMORANDUM DECISION AND ORDER - 2**

Having exhausted his administrative remedies, Petitioner timely filed this instant action. Petitioner argues that the ALJ's decision is in error, because: (1) it does not appropriately evaluate Petitioner's mental impairments of mild mental retardation, learning order and depression; (2) it does not adequately support a finding that Petitioner is not credible; and (3) is not supported by the testimony of a vocational expert.  Petitioner requests that the ALJ's decision be reversed and benefits awarded or, in the alternative, this matter be remanded for another hearing and to allow the ALJ to further evaluate the evidence.  *Petitioner's Brief* (Docket No. 12).

## II.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less

**MEMORANDUM DECISION AND ORDER - 3**

than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

      With respect to questions of fact, the role of the court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

      With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases."  *Id*. at 1095 (citation omitted).

**MEMORANDUM DECISION AND ORDER - 4**

## III.

## DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).  The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If the answer is in the affirmative, disability benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity since his alleged onset date.  (AR 18).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  The ALJ found that Petitioner has a low back syndrome and this impairment and related pain at least meets the threshold criteria of a severe impairment as it has more than a slight effect on his ability to work.  (AR 18).  The ALJ also found that Petitioner's learning disorder in written language and below average IQ are not severe as there is no evidence that these conditions impact his functioning to any significant effect.  (AR 19).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).  In this respect, the ALJ concluded

that Petitioner does not have an impairment, singly or in combination, that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (AR 20).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  In this respect, the ALJ concluded that Petitioner retains the residual functional capacity to perform the full range of light work activity on a sustained basis.  (AR 23).  Therefore, the ALJ determined that Petitioner would not be able to perform any of his past relevant work which required heavy exertion.  (AR 25).

In his analysis of Petitioner's residual functional capacity, the ALJ addressed Petitioner's alleged mental conditions and determined that Petitioner has no limitations of mental functioning that would limit Petitioner to unskilled work.  (AR 23).  The ALJ considered Petitioner's learning disorder in written language and below average IQ and ultimately concluded that Petitioner is at least literate, capable of reading and writing simple material, and has a demonstrated capacity to perform skilled and semi-skilled jobs in the past without significant difficulties.  *Id.*

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  In this respect, the ALJ found that Petitioner has the residual functional capacity for the full range of light work, and considering Petitioner's age, education and work experience, a finding of not disabled is

**MEMORANDUM DECISION AND ORDER - 6**

supported by application of Medical-Vocational Rule 202.21.  The ALJ concluded that there are

jobs existing in significant numbers in the national economy which Petitioner is able to perform.

(AR 26).

## B.      Mental Impairments

Petitioner argues that the ALJ failed to evaluate properly Petitioner's mental condition at

the second step of the sequential evaluation process. *Petitioner's Brief*, p. 7 (Docket No. 12).

Petitioner argues that he alleged a *severe* mental impairment resulting from below average IQ,

learning disability, and depression.  *Id.*

"A medically determinable impairment or combination of impairments is 'severe' if it

significantly limits an individual's physical or mental ability to do basic work activities."  20

CFR § 404.1520.  Examples of basic work activities include "[p]hysical functions such as

walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling."  20 C.F.R.

§ 404.1521(b)(1).  In addition, basic work activities include mental functioning, such as

[u]nderstanding, carrying out, and remembering simple instructions . . . use of judgment . . .

[r]esponding appropriately to supervision, co-workers and unusual work situations; and [d]ealing

with changes in a routine work setting."  20 C.F.R. § 404.1521(b)(3)-(6).

In the instant case, the ALJ noted that Petitioner "alleged a mental condition" and

"testified at the hearing that he can barely read and write because of a learning disability."  (AR

19).  The ALJ noted that the high school records reflect that Petitioner "has a full scale IQ score

of 80, verbal IQ score of 81, performance score of 82, a writing ability at the 3rd grade level, and

reading ability at the 4th grade level.  *Id.*  The ALJ also noted that Petitioner is at least literate,

able to read and write simple material, as he filled out the disability forms in his own

**MEMORANDUM DECISION AND ORDER - 7**

handwriting and "has worked successfully for years despite his learning disorder in written language and below average IQ scores." *Id.*

Based on this evidence*,* found that Petitioner has a "learning disorder [that] causes him difficulty with reading and writing and IQ is below average." (AR 20). Nonetheless, the ALJ concluded:

> Based on the medical and other evidence, claimant's learning disorder in written language and below average IQ have resulted in no restrictions of activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.

*Id.* In other words, the mental impairments are not medically severe.

Petitioner argues that the evidence is insufficient to uphold the ALJ's decision, because the ALJ improperly placed "no significant probative weight" on a cognitive evaluation dated August 5, 2005 (AR 326). *Petitioner's Brief*, p. 8 (Docket No. 12). In addition, Petitioner also argues that the ALJ did not appropriately consider evidence of Petitioner's learning disability and depression.

### 1.    Conflicting Evidence Regarding IQ Testing

Petitioner argues that the ALJ's stated reasons for discounting the 2005 cognitive evaluation do not withstand scrutiny. *Petitioner's Brief*, p. 7 (Docket No. 12). In the 2005 cognitive evaluation, Leailani Arms, M.A. and Scott Armentrout, Ph.D. administered an IQ test, the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III); and Petitioner attained IQ scores in the 60's (1st percentile). (AR 326).

The ALJ discounted the 2005 cognitive evaluation tests for two primary reasons. First, the ALJ first noted that the results were inconsistent with other evidence in the record, including

**MEMORANDUM DECISION AND ORDER - 8**

Plaintiff's high school IQ scores and his work history of skilled and unskilled work.  (AR 19).

The record shows that Petitioner's high school IQ tests reflect higher intellectual capabilities

than the 2005 cognitive evaluation.  Ultimately, the ALJ weighed the conflicting evidence in the

record concerning Petitioner's IQ and found the evidence obtained in high school more reliable

than an evaluation made after the application for benefits had been filed.  *Id.*  In doing so, the

ALJ had the benefit of viewing Petitioner at the hearing and evaluating Petitioner's ability to

answer questions and relate information.  In addition, Petitioner's reported work history reflects

that he applied for and was offered employment in skilled and semi-skilled capacities fairly

consistently from at least May 1998 through October 2003.  (AR 71, AR 110).  In his last job,

Plaintiff worked for over a year in construction molding and framing floors in a job the

vocational expert characterized as semi-skilled.  *Id*.

Second, the ALJ also discounted the 2005 cognitive evaluation based on questions raised

in the evaluation itself concerning its accuracy.  The ALJ noted that "[t]he usefulness of the

cognitive examination . . . was undermined by questions raised by the examiner regarding the

accuracy of the result."  (AR 19).

The cognitive evaluation states that it may be inaccurate due to Petitioner's reported sight

problems and depression.  (AR 327).  The ALJ subsequently discounted the veracity of the

reported sight problems and depression as not supported by the medical evidence.  (AR 19).

Nonetheless, the comment in the 2005 cognitive evaluation does raise questions regarding its

accuracy despite the fact that Petitioner may not be legally blind or depressed.  First, the

comment underscores the fact that Petitioner reported questionable information to the evaluators.

Second, the comment could reflect that the evaluators found the results inconsistent with

**MEMORANDUM DECISION AND ORDER - 9**

Petitioner's behavior in his office.  Therefore, it was not inappropriate for the ALJ to weigh the comment in his decision to discount the 2005 cognitive evaluation.

In short, the ALJ's decision to discount the 2005 cognitive evaluation and rely on IQ scores obtained while Petitioner was in high school, is based upon substantial evidence and sound reasoning.  Therefore, the ALJ's finding that Petitioner's low IQ is not medically severe will be upheld..

### 2. Evidence of Learning Disability

The ALJ's evaluation of Petitioner's learning disability is inextricably connected to his discussion of Petitioner's IQ.  The ALJ determined that Petitioner has a "learning disorder [that] causes him difficulty with reading and writing and IQ is below average."  (AR 20).  Nonetheless, the ALJ concluded that these mental conditions were not medically severe, as they "have resulted in no restrictions of activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation."  *Id.*

In support of his finding that Petitioner's learning disability is not severe, the ALJ relied upon evidence that Petitioner is able to read and write simple material, filled out forms in his own handwriting, and worked successfully for years despite his learning disorder in written language.  (AR 19).  In addition, the ALJ noted that Petitioner applied for benefits based on a lower back condition and testified at the hearing that "he primarily believes he cannot work due to his low back condition."  *Id.*

Petitioner argues that the ALJ improperly discounted evidence of Petitioner's learning disability in written language by relying upon the fact that Petitioner filled out the disability

**MEMORANDUM DECISION AND ORDER - 10**

forms when Petitioner testified that his wife had helped him fill out the forms. *Petitioner's Brief*, p. 9-10 (Docket No. 12).  While I may not have come to the same conclusion as the ALJ, the ALJ's decision is based upon sufficient evidence in the record.  Petitioner testified that he required help in filling out the disability forms.  However, with this help, Petitioner, in fact, filled out the forms in his own handwriting.  Furthermore, as reflected in the high school IQ scores, Petitioner is able to read and write simple material.  (AR 213-231).  In addition, as discussed previously, regardless of how Petitioner would categorize his work history, the record reflects that Petitioner has applied for and obtained employment in various skilled and unskilled capacities.  (AR 71, 110).

The ALJ's finding that Petitioner's learning disability is not medically severe is supported by the evidence and sound reasoning.  Therefore, the finding will be upheld.

### 3.        Evidence of Depression

Petitioner argues that the ALJ should not have discounted Petitioner's self- reported depression, because it is not uncommon for individuals with mental illness to avoid seeking mental treatment. *Petitioner's Brief*, p. 8 (citing *Regennitter v. Commissioner*, 166 F.3d 1294 (9th Cir. 1999)).  Here, the only evidence on record of depression comes from the 2005 cognitive evaluation.  In the context of this evaluation, Petitioner also informed the examiner that he was legally blind, another condition not mentioned anywhere else in the record and a factor that certainly would be relevant in an application for disability payments.  Because the ALJ discounted Petitioner's credibility, as discussed below, and there is no other evidence of this condition in the record, it was entirely appropriate for the ALJ to not consider the depression in his evaluation of Petitioner's mental condition.

**MEMORANDUM DECISION AND ORDER - 11**

C.      **Petitioner's Credibility**

Generally, in determining whether the claimant's subjective testimony regarding the severity of his/her symptoms is credible, "the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [claimant's] testimony and [his/her] conduct, [claimant's] daily activities, [claimant's] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). Further, the Ninth Circuit has held that "the ALJ may reject the claimant's testimony regarding the severity of [his/her] symptoms only if he makes specific findings stating clear and convincing reasons for doing so," and he "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ is in the best position to make such credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).

"In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision" and that "[t]hese findings must enable the ALJ to 'convincingly justify his rejection' of the claimant's excess pain testimony." *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989) (citations omitted). The court in *Fair* recognized that "while it is not entirely clear what sorts of findings meet this requirement," the Ninth Circuit expressly stated that testimony about the claimant's daily activities or a failure to seek treatment or follow a prescribed course of treatment would be an acceptable form of evidence. *Id.*

**MEMORANDUM DECISION AND ORDER - 12**

In the instant action, the ALJ conducted a thorough investigation and summary of the record, beginning with Petitioner's testimony at the hearing.  (AR 21-23).  Based on this review, the ALJ concluded that "claimant cannot perform past work because it would likely aggravate his lumbar sprain and increase spasm due to the heavy exertional demands."  (AR 23). Nonetheless, the ALJ rejected Petitioner's allegation that his pain is so debilitating that he cannot perform any work at all.  *Id.*  The ALJ concluded that Petitioner "has underlying impairments that could reasonably be expected to produce some pain but his pain complaints suggest a greater severity of impairment than can be shown by the objective medical evidence alone."  (AR 21).

In rejecting Petitioner's subjective pain testimony, the ALJ found the Petitioner not credible based on five factors, including: (1) medical testimony; (2) Petitioner's treatment history and use of medications; (3) Petitioner's testimony regarding his daily activity; (4) Petitioner's description of pain; and (5) Petitioner's "obvious overstatements." (AR 23-24).  As described in greater detail below, these facts provide clear and convincing evidence to support the ALJ's decision to discount Petitioner's subjective pain testimony.

### 1.      Medical Sources

As the ALJ correctly summarized, "some treating and examining sources have noted the claimant's subjective complaint of incapacitating pain and recommended not returning to past work, [but] . . . none of the treating and examining sources found him totally disabled."  (AR 23).  The ALJ found the opinion of examining orthopedic physician, Michael T. Phillips, M.D. most persuasive on the issue.  *Id.*  Dr. Phillips concluded that Petitioner could perform "light work activity as much as eight hours a day."  (AR 288).

**MEMORANDUM DECISION AND ORDER - 13**

2.        **Claimant's Treatment History and Use of Medication**

The injuries precipitating Petitioner's current back condition occurred on July 7 and 8,

2003 (AR 283).  As the ALJ noted, Petitioner sought treatment and took medication for the next

three or four months.  (AR 23).  For example, on October 1, 2003, Dr. Phillips examined

Petitioner and noted that Petitioner's prescription medication was limited to Celebrex and the use

of Advil as needed for pain.  (AR 285).  Thereafter, as the ALJ correctly described, Petitioner

has a minimal treatment history for his physical symptoms, including pain.  (AR 24.)  The ALJ

also noted that Petitioner went to the emergency room for abdominal pain in May 2005 (AR 239)

but never solicited help for his allegedly unremitting back pain.  (AR 24).  Similarly, when the

Petitioner visited his physician in 2004 and 2005, he did not report use of any pain medications

(AR 319-325).  (AR 24).  In light of this evidence, the ALJ reasonably concluded that such a

history is inconsistent with Petitioner's allegations of uncontrolled, debilitating pain.

3.        **Testimony Regarding Daily Activity**

The ALJ found that Petitioner's testimony at the hearing regarding his daily activity was

inconsistent with the personal data questionnaire.  *Id.*  Specifically, at the hearing Petitioner

testified that he has primary custody and responsibility for his physically disabled, six year-old

son.  *Id.*  Such responsibility includes driving and caring for his son, activities not accounted for

on the daily activities questionnaire.  The inconsistent testimony may be explained by the fact

that Petitioner assumed primary custody of his son after he had completed the personal data

questionnaire.  Nonetheless, the level of activity may be one factor for the ALJ to consider when

evaluating Petitioner's subjective pain testimony, and it was reasonable for the ALJ to conclude

**MEMORANDUM DECISION AND ORDER - 14**

that such activity is inconsistent with Petitioner's alleged inability to perform any work due to debilitating pain.

### 4.      Petitioner's Description of Pain

The ALJ found Petitioner's description of his pain "vague and nonspecific as to duration, frequency, and intensity."  (AR 24.)  A review of the testimony at the hearing reflects this to be true.  (AR 358-362, 367 - 380, 387).

### 5,      Overstatements in the Record

The ALJ also discounted Petitioner's subjective pain testimony due to "obvious overstatements" in the record.  (AR 24).  These statements include reporting to a treating source that he has heart disease (AR 194) and reporting to another treating source that he is legally blind.  (AR 327).

Taken together, these five factors provide clear and convincing evidence to support the ALJ's finding that Petitioner's subjective pain testimony is not credible.  Nonetheless, Petitioner takes issue with the ALJ's findings for two basic reasons: (1) the ALJ's finding "was colored by his failure to recognize Petitioner's mild mental retardation and difficulties with decreased intellectual functioning" and (2) the ALJ failed to consider evidence in the record, including the evaluation of Dr. Michael O'Brien, M.D. that would substantiate Petitioner's subjective pain complaints.  *Petitioner's Brief*, p. 11 (Docket No. 12).

With regard to Petitioner's claim of "mild mental retardation," the ALJ determined that Petitioner is "not mentally retarded" as suggested in the 2005 cognitive evaluation.  (AR 19).  As previously discussed, this claim is wholly inconsistent with other evidence in the record,

**MEMORANDUM DECISION AND ORDER - 15**

including Petitioner's high school records, and will not be deemed a sufficient reason to question the ALJ's findings regarding credibility.

As to Dr. O'Brien's opinion, the ALJ properly considered this opinion but ultimately found other medical opinions more persuasive as to Petitioner's subjective pain.  (AR 201).  Dr. O'Brien examined Petitioner on April 14, 2004 and determined that Petitioner had experienced a "seemingly minor injury" that "has transformed itself into a spastic spine which contorts the patient and will not let go."  (AR 320).  Dr. O'Brien explained that he had treated Petitioner's identical twin brother for a similar condition referred to as "spastic torticolis," "an unusual tightness of the neck which cause a grotesque postural appearance."  *Id.*  According to Dr. O'Brien's evaluation, his neurological examination "does not reveal anything beyond spastic back.  There are no unusual reflex signs, weakness, or sensory losses that would verify the problem."  (AR 201).  On the basis and based on his experience with Petitioner's brother, Dr. O'Brien concluded that Petitioner exhibits " a problem that is quite unique and genuine."  *Id.*  Specifically, Dr. O'Brien came to the conclusion that Petitioner's back spasm resulted from a genetic predisposition.  (AR 320).

The ALJ considered Dr. O'Brien's evaluation as support for the finding that Petitioner does not show any objective evidence to support the subjective pain testimony.  This factor, in addition to the others listed above, made the ALJ conclude that Petitioner's subjective pain testimony is not credible.  In contrast, Petitioner relies upon Dr. O'Brien's evaluation to demonstrate that he has a profound genetic problem that cannot be explained by objective medical evidence alone.  Either interpretation of the report is reasonable, and I will not substitute my judgment or that of the ALJ, even though we might come to different conclusions.

**MEMORANDUM DECISION AND ORDER - 16**

Moreover, the opinion of Dr. Phillips directly contradicts that of Dr. O'Brien. Both examining physicians were struck by the lack of objective evidence to support Petitioner's claim. However, while Dr. O'Brien determined that the source of the heightened pain was a genetic predisposition to spasm, Dr. Phillips' report indicates that Petitioner was exaggerating his pain symptoms.

For example, Dr. Phillips observed "significant inconsistencies in body posturing." (AR 286). Petitioner "ambulated with the left lower extremity held in 90 degrees of external rotation" and "an intermittent limp." (AR 287). However, "[w]ith passive exam on the table the claimant postured his left lower extremity at maximal internal rotation, inconsistent with his gait posturing of external rotation." (AR 287). Dr. Phillips also noted that Petitioner was able to dress himself in the "appropriate gown and was on and off the exam table unassisted." (AR 286). While Petitioner refused to perform some of the tests, Dr. Phillips noted that his "[p]araspinous muscles did contract alternately with gait" and "[m]inimal spasm is detected." (AR 287). Dr. Phillips noted no atrophy of Petitioner's limbs. *Id.*

In the face of the conflicting opinions between Dr. Phillips and O'Brien, the ALJ made an appropriate judgment call and determined that Dr. Phillips' opinion was more persuasive. By relying upon Dr. Phillips' opinion and discounting Dr. O'Brien's, the ALJ did not err but made a reasoned judgment that will not be overturned on appeal.[2]

---

[2]   Additional support for Dr. Phillips' opinion comes from an April 13, 2001 evaluation suggesting that a previous cervical spine injury had a psychological, rather than physical, origin. (AR 248).

**MEMORANDUM DECISION AND ORDER - 17**

After carefully reviewing the record, the Court concludes that the ALJ properly rejected Petitioner's credibility regarding the severity of his pain.  The Ninth Circuit has recognized that "[c]redibility determinations are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Where, as here, the ALJ has made specific findings justifying a decision to discount and reject certain allegations made by Petitioner regarding symptoms and their functional effect on daily activities, and those findings are supported by substantial evidence in the record, as the Court concludes they are in this action, the Court's role is not to second-guess that decision.  In the Court's view, the ALJ's findings to reject Petitioner's credibility are sufficiently specific to allow the Court to conclude that the ALJ's decision is based on permissible grounds and did not arbitrarily discredit Petitioner's testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  Accordingly, the Court concludes that the ALJ's decision to reject certain aspects of Petitioner's subjective testimony concerning his symptoms/limitations is not erroneous and should not be disturbed on appeal.

## D.    Vocational Expert

Petitioner argues that the ALJ's finding that Petitioner is capable of performing work in the national economy was in error, as the ALJ did not obtain testimony from a vocational expert and relied upon the Medical-Vocation Guidelines.

To be entitled to disability benefits, a person must not only be unable to perform his former work but must also be unable, considering his age, education and work experience, to "engage in any other kind of substantial gainful work which exists in the national economy regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42

**MEMORANDUM DECISION AND ORDER - 18**

U.S.C. § 423(d)(2)(A). "[O]nce a claimant has proven that his physical impairment prevents a return to his previous occupation, the burden shifts to the Secretary to show that the claimant can engage in other types of gainful work that exist in the national economy." *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).

"Prior to 1978, the Secretary relied on vocational experts to establish the existence of suitable jobs in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461 (1983). "Although this testimony often was based on standardized guides . . . vocational experts frequently were criticized for their inconsistent treatment of similarly situated claimants." *Id.* To address these inconsistencies and promote efficiency, the Secretary in 1978 promulgated the Medical-Vocational Guidelines. *Id.* These guidelines are also referred to as "the grid."

The Medical-Vocational Guidelines "relieve the Secretary of the need to rely on vocation experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Id.* However, "[t]he regulations recognize that the rules only describe 'major functional and vocational patterns.'" *Id.* at 462, n.5 (citing 20 CFR pt. 404, subpt. P. App. 2, § 2000.00(a)). "If an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered." *Id.*

"If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." *Penny v. Sullivan*, 2 F.3d at 958 (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e). "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacities in ways not contemplated by the guidelines." *Id.*

**MEMORANDUM DECISION AND ORDER - 19**

At the hearing in the instant case, the ALJ indicated that he anticipated receiving additional records, including medical records, that would be relevant to the vocational expert's testimony.  (AR 393).  Therefore, the ALJ anticipated that he would send interrogatories to the vocational expert.  (AR 394) ("[W]hat I plan on doing, is doing interrogatories to Mr. Hudson regarding whether or not there's any work the claimant can perform or anything like that.").  However, once the additional testimony was reviewed, the ALJ apparently determined that the Medical-Vocational Guidelines could be applied, and there was no need for testimony from a vocational expert.  (AR 26).  Considering Petitioner's residual functional capacity for a full range of light work, his age, education, and work experience, the ALJ applied Medical-Vocational Rule 202.21 and consequently determined that the Petitioner is not disabled as Petitioner "retains the capacity to adjust to work that exists in significant numbers in the national economy."  (AR 26).

Petitioner argues that his mental limitations, low IQ and learning disability, render the Medical-Vocational Guidelines inapplicable to him.  *Petitioner's Brief*, p. 14 (Docket No. 12 ("The ALJ erred in strictly applying the grids in this case.").[3]  With some reluctance, the Court agrees and therefore remands the case for the purpose of obtaining testimony from a vocational expert.

The ALJ found at steps two and three of the sequential analysis that Petitioner's mental conditions- low IQ and a learning disability- were neither medically severe nor did they meet the

---

[3]    Petitioner also argues that he was not given the opportunity to cross-examine the vocational expert about the job titles and skill levels indicated in the work history summary.  *Petitioner's Brief*, p. 15 (Docket No. 12).  However, Petitioner's counsel waived this right when he agreed to allow the vocational expert to provide testimony via written interrogatories.  (AR 394).

**MEMORANDUM DECISION AND ORDER - 20**

listing criteria under 20 CFR Part 404, Subpart P, Appendix 1.  (AR 18-19).  At step four, the

ALJ found that Petitioner "retains residual functional capacity to perform the full range of light

work activity on a sustained business."  (AR 23).  The ALJ further found that Petitioner "has no

limitations of mental functioning."  (AR 23).  With reference to Petitioner's stated mental

limitations, the ALJ reasons as follows:

> His learning disorder in written language and below average IQ was considered
> but he is at least literate and capable of reading and writing simple material.
> There would be no basis to restrict him solely to unskilled work given his
> demonstrated capacity to perform skilled and semi-skilled jobs in the past without
> significant difficulties.

(AR 23).

     While there is evidence in the record that Petitioner performed skilled and semi-skilled

jobs in the past (AR 110), the record cannot support a finding that Petitioner "has no mental

limitations."  Clearly, as the ALJ recognizes, Petitioner has a lower than average IQ and a

learning disability.  The ALJ properly found that these limitations were not medically severe or

otherwise covered under the listing criteria.  Nonetheless, these non-severe, nonexertional

limitations should have been considered in establishing residual functional capacity.  *See* 20

C.F.R. § 404.1545.  While such mental limitations may not have precluded Petitioner from

finding jobs as a construction worker and cable installer in the past, it is clear that Petitioner's

mental limitations would have some affect on his ability to work and certainly impact the

applicability of the Medical-Vocational Guidelines.

     The mere existence of nonexertional impairments will not prevent the use of the Medical-

Vocational Guidelines where a claimant's exertional capabilities are not significantly limited by

the nonexertional factors.  *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983).  However, if the

**MEMORANDUM DECISION AND ORDER - 21**

Medical-Vocational Guidelines are not fully applicable and are used as a framework for reaching a decision, then the Secretary bears the burden of showing the availability of specific jobs within claimant's capabilities.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

It is undisputed that Petitioner is able to perform the exertional demands of "light work." Accordingly, the ALJ applied the Rule applicable to a younger individual who graduated from high school or more and has a work history of skilled or semiskilled work without transferable skills.  *See* 20 CFR pt. 404, subpt. P. App. 2, § 202.21.  This description is not wholly accurate, as Petitioner's took special education classes in order to complete high school due to his lower than average IQ and learning disability in written language.  Moreover, there are no other grids that specifically address Petitioner's age, education, and previous work experience.  Therefore, the case must be remanded to the ALJ for the limited purpose of obtaining the testimony of a vocational expert.

## IV.

## CONCLUSION

The Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.  Accordingly, the Court will not substitute its interpretation or judgment for that of the ALJ in reaching his decision. Nonetheless, the decision is incomplete to the extent that the medical-vocational guidelines were applied, rather than soliciting te testimony of a vocational expert.  Therefore, the ALJ's decision must be remanded for the limited purpose of obtaining the testimony of a vocational expert in step five of the sequential analysis.

**MEMORANDUM DECISION AND ORDER - 22**

**V**.

**ORDER**

Based on the foregoing, Petitioner's request for review is GRANTED.  The

Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security

Act is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for

further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v.*

*Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED:  **March 19, 2008**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**